**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MARCIA MANON**
**CZAPANSKIY-MAKINANO,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　Case No.  8:12-cv-344-T-33TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

    The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

    Plaintiff was sixty-one (61) years of age at the time of her administrative hearing. She stands 5' 3" tall and weighed 190 pounds according to her administrative filings.  Plaintiff claims nine years of college education.  Plaintiff reported past relevant work as a teacher. Plaintiff applied for disability benefits in September 2007, alleging disability as of May 1, 2006, by reason of hammer toes and personality disorder.  Plaintiff's application was denied originally and on reconsideration.

The Plaintiff received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") on January 21, 2010. The Plaintiff was represented at the hearing by counsel and testified on her own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff testified that she retired from teaching in April 2006 after twenty-one years. She simply got tired of fighting with the "board of ed," so she decided it was time to retire. In essence, Plaintiff claims she can no longer work due to problems with her left foot, her left thigh muscle, and her hip. She had surgery for hammer toes and the doctor "butchered" her foot. She claims that she now "tilts" and needs another operation. This has affected her thigh and hip. She uses a cane when she walks outside. She takes hydrocodone and two muscle relaxers for her pain. She also claims a hearing deficit, but she has not sought recent care for the condition. She broke her back at age seventeen and claims that when the weather changes or she tries to lift too much weight, it hurts. She underwent treatment for lymphoma, but has been cancer free. She believes the chemotherapy and radiation treatments affected her memory and ability to learn new things. She also claims a personality disorder and depression. The depression does not affect her as much as the personality disorder, which causes her to be negative.

Plaintiff estimated that she can walk two and a half blocks, but also stated she could walk or stand about forty-five minutes to one hour. She can sit for an hour to an hour and a half, but then her hip bothers her. Since her hip replacement, Plaintiff is limited to lifting one hundred pounds. She believes she could still lift twenty to thirty pounds frequently, and forty

to fifty pounds occasionally. She is not a people person, but enjoys animals. She has cats and she grooms dogs. Plaintiff does not have lots of friends, but does have long friendships. She has problems around people. For example, she takes a disabled friend to the store, but many times she gets angry and yells and walks out. She has problems focusing and concentrating. She draws and does arts and crafts. cooks, cleans, sews, and tends to her flowers. She cannot cook as much or as long as she used to. She pays for her housecleaning. She plays frisbee and the piano. Plaintiff takes care of her personal needs and dresses herself. She drives stick shift. She testified that she spends two to two and a half hours at a task and then needs to stop and rest for about forty-five minutes with ice on her thigh. (R. 33-51).

  The ALJ next took testimony from Joyce Courtright, a vocational expert (VE). Initially, the VE classified Plaintiff's work as a teacher as skilled, light exertional work. On a hypothetical question assuming a person of Plaintiff's age, education and work experience capable of light exertional work, frequent kneeling and crouching, climbing of ramps and stairs, but no climbing ladders, ropes, and scaffolds, occasional balancing, stooping, and crawling, but with the need to avoid concentrated exposure to extreme cold or heat, wetness or humidity, and hazards, such person could perform Plaintiff's past work as a teacher. However, if such person was limited to simple, routine, repetitive tasks, she could not do her past work.

  Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of February 3, 2010, the ALJ determined that while Plaintiff has severe impairments related to left hammer toe deformity, status post-arthroplasty, lumbago, degenerative joint disease of the right trochanter, obesity and osteopenia, she nonetheless had the residual functional capacity to perform a limited range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as an educator. Upon this conclusion, the Plaintiff was determined to be not disabled. (R.17-26).

In June 2011, the Appeals Council advised Plaintiff that it was reviewing the ALJ's decision, noting that the ALJ "found that your obesity is severe but does not evaluate it in accordance with [SSR] 02-1p." (R. 119). The notice invited Plaintiff to send additional evidence or a statement about the facts and law. In December 2011, the Appeals Council issued its decision denying Plaintiff's claim. (R. 4-6). In short, by that decision, the Appeals Council adopted the ALJ's findings and conclusions to deny benefits. It expressly addressed Plaintiff's obesity and concluded that the condition did not limit her more than as found by the ALJ. (R. 5).

B.

Entitlement to Social Security disability benefits requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises five claims on this appeal: (1) the ALJ erred in failing to properly evaluate morbid obesity in accordance with SSR 02-1p; (2) the ALJ erred in failing to evaluate each of her impairments and the combined effects of those impairments; (3) the ALJ erred in substituting his judgment for that of the medical and vocational experts; (4) the ALJ erred in relying on VE testimony based on an incomplete hypothetical question; and (5) the case should be remanded for further consideration of new and material evidence related to degenerative disc and joint disease.

While the bulk of the argument on Plaintiff's first claim relates to the ALJ, the issue remaining concerns the allegations that the Appeals Council (AC) failed to properly evaluate Plaintiff's morbid obesity in accordance with SSR 02-1p. Thus, while she propounds a lengthy argument concerning the ALJ's failure to abide by that ruling (Doc. 8 at 2-8), such was recognized by the AC which granted review on the matter of Plaintiff's obesity (R. 118-20). Therefore, it is the AC's decision on her obesity which is at issue. In that regards, Plaintiff complains that the AC's review was "cursory" and failed to address new and material evidence documenting degenerative disc of the lumbar spine and degenerative joint disease of the hips and pelvis which are likely to produce symptoms complained of by Plaintiff. A similar "new evidence" argument is made on her last claim. She urges that the AC simply adopted the decision of the ALJ, and thus also failed to apply the standard set forth in SSR 02-1p.

6

In response, the Commissioner argues that the AC expressly evaluated her obesity and determined that such did not cause limitations in addition to those determined by the ALJ. As the AC noted, at 5' 3" tall and 199 pounds, Plaintiff's Body Mass Index of 35.2 represents a medically determinable impairment of obesity that is not extreme, in accordance with NIH ratings. Neither the obesity considerations nor new evidence submitted to the AC suggests any additional limitations not accounted for by the ALJ, and Plaintiff fails to demonstrate that further consideration is necessary or appropriate on either claim.

By my consideration, when the whole of the AC's written comments about Plaintiff's obesity are considered, there is no error requiring a remand. In its initial notice to Plaintiff advising her that it had granted her request for review, the AC advised Plaintiff of its intentions, stating,

> We plan to make a decision that evaluates your obesity in accordance with Social Security Ruling 02-1p. Your obesity does not limit your functional ability more than the light residual functional capacity found in the decision. Examinations showed no significant limitations. You had a normal gait, used no assistive device and could fully squat.
>
> The Administrative Law Judge found that your obesity is severe but does not evaluate it in accordance with Social Security Ruling 02-1p.
>
> You may send us more evidence or a statement about the facts and the law in your case within 30 days of the date of this letter.

(R. 118-19). In response, Plaintiff submitted additional argument (R. 229-34) and new medical evidence from Drs. Nirmalan and Mixa, along with reports from MRI and CT scans. *See* (R. 496-525). In its decision denying the claim, the AC recited the procedural history and adopted the ALJ's statement of the applicable provisions of the Act and regulations, as well as his statement of the issues in the case and the evidentiary facts. Before expressly discussing

7

the impairment of obesity, the AC recognized the five step evaluation process dictated by the regulations and stated its agreement with the ALJ's findings at each step. In sum, it adopted the ALJ's findings and conclusions on disability. (R. 4). In regards to Plaintiff's obesity, the AC stated,

> The Appeals Council considered the claimant's obesity and evaluated it in accordance with Social Security Ruling 02-lp. The claimant's weight was 199 pounds at the consultative examination in November 2007 and her height was 5'3". According to the National Institute of Health, the claimant's resulting BMI of 35.2 represents a medically determinable impairment of obesity that is not extreme. The consultative examiner noted the claimant had a normal gait, could fully squat and used no assistive device. There were no significant limitations. (Exhibit l0F) Subsequent medical records from Dr. Nadarajah show the claimant weighed 196 pounds in August 2010 and 187 pounds in October 2010. (Exhibit 27F) Obesity continued at the same level. Therefore the Appeals Council finds that the claimant's obesity does not limit her more than that found in the decision. The claimant has the residual functional capacity for light work.

(R. 5).

By my consideration, when carefully read, the initial notice and decision reflect the AC's review of Plaintiff's obesity in light of the whole record and in accordance with SSR 02-1p.[1] Plaintiff's claim that the review was "cursory" or not in compliance with this ruling is simply not established. In essence, the AC determined that the RFC assessed by the ALJ was supported by the whole of the evidence even upon consideration of her obesity. Moreover, as

---

[1] Social Security Rulings are agency rulings issued to clarify regulations and policy and are binding on all components of the Administration. *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). Such rulings are not binding on this Court, however, they are accorded deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981). SSR 02-1p recognizes the import of obesity to the disability analysis and prescribes how obesity is to be considered at each step of the five step evaluation process.

the Commissioner urges, while Plaintiff argues that her obesity aggravates her conditions and could extend her limitations, she fails to identify from the record additional functional limitations which should have been assessed, but were not.

Plaintiff similarly argues that the AC failed to address the new and material evidence that documented advanced degenerative conditions in her lumbar spine, hips and pelvis. In particular, she argues that the AC failed to properly consider and address the new reports from Dr. Mixa. Since such conditions identified in the evidence are likely to produce the symptoms Plaintiff complained of and such were not properly and fully considered by the AC, a remand for further consideration is required. Again, I disagree.

Here, in response to the AC's invitation that she file additional medical evidence for its review, Plaintiff submitted new evidence consisting of reports of an MRI and two CT scans which generally revealed degenerative conditions in Plaintiff's lumbar spine, *see* (R. 498-99, 502-03), and treatment notes from Dr. Nadarajah Nirmalan, M.D., including a report of a x-ray of the left hip showing moderate osteoarthritis of the hip joint, (R. 504- 12), and records concerning diagnosis and a left hip replacement by Dr. Thomas Mixa, M.D., (R. 515-25). While this new evidence does not speak to her obesity except to suggest that the condition remained the same as when considered by the ALJ,[2] I agree with Plaintiff that this objective evidence does offer additional support for the Plaintiff's lumbrosacral complaints for which

---

[2] Such was the conclusion of the AC upon its consideration of the additional notes from Dr. Nirmalan concerning her height and weight in August and October 2010. It found that the obesity continued at the same level and thus was not a cause to find greater limitations than those determined by the ALJ. (R. 5). A review of this doctor's notes, which are quite difficult to read, does not reveal any error in this conclusion.

9

the ALJ found little evidence. However, as urged by the Commissioner, the issue is whether the records dictate the conclusion that either individually or in combination with the obesity, the AC erred in concluding that no additional functional limitations were required over those imposed by the ALJ. On that point, I agree that they do not. Dr. Nirmalan's notes add little, if anything, to the evidence. Dr. Mixa's records document left hip degenerative disc disease, including osteoathrosis of the pelvis, for which he performed a total left hip replacement in September 2010. Plaintiff argues that the AC had such evidence, yet failed to address it and thus, a remand is required. However, the AC did address it by noting that the procedure occurred well after the date of decision. (R. 5). The clear implication of this is that the AC found the evidence immaterial to the period under consideration. I am offered no basis on this appeal to find error in that conclusion. By a review of these records, Dr. Mixa began Plaintiff's care in September 2010, about seven months after the ALJ's decision. His records do not speak to her obesity, only to the condition of Plaintiff's hip. While noting that her degenerative condition was progressively worsening and becoming more painful and that Plaintiff wished a replacement procedure, Dr. Mixa did not suggest functional limitations which the AC should have considered, but did not. The doctor's post-operative records indicate the surgery was successful and to the extent that she was limited by this doctor, it was to "[a]ctivities as tolerated." (R. 515-16). Thus, while the new evidence offers greater clarity to Plaintiff's lumbar spine and hip condition, it does not dictate a different result than that reached by the ALJ.

In sum, Plaintiff fails to demonstrate the errors claimed in her first and last claims, and I find no cause to order a remand on these issues.

By her second claim, Plaintiff argues that despite finding that her osteopenia, lumbago, degenerative joint disease of the right trochanter and obesity were severe impairments, the ALJ failed to adequately discuss each, make well-articulated findings regarding their effect, and failed to discuss the combined effect of all of them.

While agreeing that the ALJ must consider the claimant's impairments individually and in combination, the Commissioner urges that the ALJ individually discussed the impairments Plaintiff alleged were severe, including those he determined were not severe, and then determined that her impairments, considered in combination, did not render her disabled. He argues that the ALJ's entire discussion reflects consideration of the impairments combined.

Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all of a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). Here, however, apart from her obesity, a fair reading of this decision otherwise reflects the ALJ's consideration of each of her impairments as revealed in the medical evidence before him. *See* (R. 21-25). Thus, the ALJ expressly addressed her back pain, osteopenia, foot pain, right hip replacement, as well as a purported hearing loss as such was then revealed. Plaintiff simply makes no showing that this evaluation was incorrect or inadequate.

The decision also reveals the ALJ's consideration of the combined effect of all her impairments as then revealed. In this Circuit, the ALJ's statement that the claimant "did not have an impairment *or combination of impairments*" that would amount to a disability evidences adequate consideration of the combined effect of a claimant's impairments. *Wilson*,

11

284 F.3d at 1224-25 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).  Here, at step three of the evaluation process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.  (R. 21).  Beyond this general conclusion, the ALJ, after addressing Plaintiff's various impairments, expressly found that "in regard to functional effects from all of the lower body musculoskeletal derangements, the applicant simply is not as impaired as she claimed."  (R. 23).  The decision also reflects that as part of the evaluation, the ALJ also considered Plaintiff's subjective complaints.  *Id.*  In light of this, I am unable to agree that the ALJ failed to consider the combined effect of all of Plaintiff's impairments.

By her third claim, Plaintiff argues that the medical evidence reveals that she suffers from severe mental impairments related to major depression and an antisocial personality disorder and that such is supported by Plaintiff's testimony as well as the conclusions of the consulting psychological examiner, Gerald Hodan, Ph.D.  By Dr. Hodan's assessment, she suffers major depression and personality disorder, and that getting along with others, maintaining smooth relationships, following rules, and anger management issues will be problematic for Plaintiff.  Despite this evidence and the ALJ's own finding that Plaintiff had left her last job due to her conflicts, the ALJ found her anxiety and depression non-severe.  Plaintiff urges that in doing so the ALJ substituted his own opinion for that of this expert and thus, for both reasons, a remand is in order.

In response, the Commissioner urges that the ALJ was not obligated to credit the opinions of this consulting examiner nor give his opinions any particular deference.  He urges that the ALJ articulated very specific reasons for discounting Dr. Hodan's opinions, including

12

that Plaintiff had never been treated by a mental health provider nor had she needed in-patient care for any mental condition. Further, the ALJ found Dr. Hodan's report internally inconsistent, reporting on the one hand that Plaintiff was depressed, yet indicating on the other that she was personable and humorous. The ALJ also noted Plaintiff's bombastic approach seemed to represent a life-long personality choice, and not a mental disorder, given her full recognition of her contumacious comments and their effects.

Here, the decision reflects the ALJ's conclusion that Plaintiff's medically determinable impairments of anxiety and depression would not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore, non-severe. (R. 20-21). In reaching this conclusion, the ALJ rejected any suggestion by Dr. Hodan's GAF score of 55 that Plaintiff might suffer moderate social limitations. By his consideration of the record, such as it was, Plaintiff was only mildly affected in social functioning by reason of her affective and personality disorders. (R. 334-46). While fully recognizing the consultative evaluation by Dr. Hodan, the ALJ chose to discount his suggestions of moderate limitations based upon a complete lack of any formal psychiatric or psychological treatment history, "inconsistent" findings by Dr. Hodan in relation to Plaintiff's purported depression, and Plaintiff's own testimony which suggested to the ALJ that she was fully aware of her outspokenness and bombastic approach and that such was a life-long personality choice rather than a product of mental illness.

By my consideration, to the extent that Plaintiff is suggesting an error at step two of the evaluation process, there is no error requiring a remand. At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether

13

a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). By definition, an impairment is severe if it significantly limits a claimant's mental or physical ability to do basic work activities.[3] However, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). As the decision reflects, the ALJ credited Plaintiff with a number of impairments at step two and then proceeded through steps three and four of the evaluation process. Thus, even assuming Plaintiff suffered a severe mental impairment, the failure to find such at step two is inconsequential. Moreover, because the Plaintiff fails to demonstrate mental limitations significant to the ALJ's RFC assessment and the conclusions at steps three and four, I find no error requiring remand for this reason.

I also disagree that the decision reflects that the ALJ substituted his personal opinion for that of the consulting expert. The mental health record here was minimal at best. Plaintiff appears never to have sought or received any mental health care, and the ALJ was left to

---

[3]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. §§ 404.1521(b), 416.921(b).

weigh and evaluate her subjective claims and the reports of a nonexamining and an examining doctor. By his assessment, the Plaintiff did not demonstrate significant mental limitations in her ability to perform work activities. While Plaintiff urges that the ALJ reached his conclusion by substituting his opinion for that of Dr. Hodan, I find that the decision reflects it was based on review of the whole of this limited record.

Thus, on a close reading, the decision reflects that the ALJ discounted the moderate limitations suggested by the GAF score of 55 because such scores are too subjective and non-specific for Social Security purposes.[4] (R. 20-21). This conclusion is consistent with the approach taken by the Commissioner and is supported by case law. As has been recognized in this Circuit, the Commissioner has declined to endorse the use of GAF scores in disability determinations. *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005). Nor does a GAF score translate into a specific finding in regard to functional limitations. *See Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008). Standing alone, without further explanation, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. *Seymore v. Apfel*, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence

---

[4]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV). A GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).

an impairment seriously interfering with claimant's ability to work"); *accord Cox v. Apfel*, No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000). In sum, the ALJ's rejection of the GAF score does not merit a remand. And, by my consideration, beyond the GAF score, neither Dr. Hodan's assessment nor that of the later report from the nonexamining doctor required a conclusion that Plaintiff suffered severe mental limitations.

In addressing Plaintiff's psychological work capabilities, Dr. Hodan reached the following conclusions,

> As regards psychological work capabilities, excluding any reference to restrictions that may exist because of her reported physical health problems, Marcia was not found today to present with severe impairments in attention, concentration, or memory needed to understand, remember, and follow-through on instructions given to her in a job setting. She appears capable of following simple, even somewhat detailed instructions, should be able to present herself for work reliably and do so with good personal grooming and hygiene. She does apparently have issues when it comes to relating to others over time. As she stated, she does not believe in "tact" and likes to say things "as they are." This will undoubtedly create friction for her in trying to relate to others over time, even possibly result in her losing employment. She obviously could benefit from ongoing mental health treatment, counseling along with medication in order to achieve some degree of insight into the consequences of her views and opinions so that she perhaps could improve upon her relationships with others. She does drive and would be able to provide for her own transportation to work . . . .

(R. 318). While the ALJ did question Dr. Hodan's "inexplicable citation of depression," in light of his other findings that she was not presently depressed; her mood did not suggest her being depressed or anxious; and his observation of her good humor, the ALJ ultimately credited the diagnosis for depression. And, apart from the doctor's opinion that Plaintiff's reported lack of tact would undoubtedly cause friction with others overtime which could result in her losing a job, Dr. Hodan's conclusions do not reveal significant limitations in Plaintiff's

16

mental functioning. While Plaintiff may urge otherwise, I conclude that the ALJ was not required to read more significant limitations in social functioning into this lone comment which was based largely upon Plaintiff's self-report. I also find that Plaintiff's own comments support the ALJ's conclusion that Plaintiff's negativity and lack of tact appear to be matters of deliberate choice rather than mental illness, which in any event did not prevent Plaintiff from having a long career as a teacher. In the end, the ALJ agreed with the later assessment by Dr. Michael Stevens, Ph.D. By that doctor's review, based in part on Dr. Hodan's assessment, Plaintiff suffered only mild limitations in social functioning and no severe mental impairment. (R. 334-46). In sum, I conclude that a remand on these grounds is not warranted.

By her fourth claim, Plaintiff argues that the hypothetical questions propounded by the ALJ to the VE were incomplete, leaving out limitations in standing and walking because of hammer toes, degenerative joint disease and osteopenia; limitations related to her obesity; and limitations related to her degenerative joint disease of the left hip and degenerative disc disease of the lumbar spine. She urges that the limitations she testified to related to sitting, standing and walking; the limitations in completing tasks; and the limitations in memory and learning new tasks were left out of the hypothetical questions. The failure of the ALJ to include all pertinent limitations with the VE dictates this Court's conclusion that the vocational decision by the ALJ is unsupported by substantial evidence.

Here, the Commissioner responds that the hypothetical employed by the ALJ included all demonstrated functional limitations. While the Plaintiff claims additional diagnoses, she has not demonstrated that she has additional limitations from any condition not considered by the VE. Under the applicable standard, the ALJ did not need to include

17

limitations in the hypothetical to the VE which were not found to exist.  Therefore, the Commissioner argues that there is no error here requiring remand.

Case law in this Circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record, and which include all limitations or restrictions of the particular claimant.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *See id.*  However, the ALJ is not required to include impairments or limitations in the hypothetical that the ALJ has properly discounted or rejected as unsupported.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Initially, to the extent that Plaintiff here relies upon the new evidence submitted to the AC, I find this claim settled by the AC's conclusion that neither her obesity nor the new evidence about her back and left hip resulted in greater limitations than those found by the ALJ.  As noted above, the AC indicated that it had considered all the evidence before the ALJ, his findings, and the new evidence in determining that the ALJ's decision should be affirmed. While Plaintiff here urges her subjective complaints should have been included based on this evidence, she fails to demonstrate with any particularity how such are supported by the new evidence.[5]  My review of the new evidence does not reveal additional limitations cited by any

---

[5] It merits noting that Plaintiff was represented by counsel at the administrative hearing who was afforded a full and fair opportunity to question the VE.  Counsel declined to ask the VE any questions.

18

of the medical sources which were necessary to a full and complete hypothetical question. Thus, neither Dr. Nirmalan nor Dr. Mixa proposed any limitations on Plaintiff's functional activity. While the evidence from Dr. Mixa concerning Plaintiff's left hip showed a deteriorating condition, the hip replacement surgery went well and post-surgery, the doctor did not place limitations on Plaintiff apart from "activities as tolerated." The objective evidence submitted to the AC did reveal degenerative conditions in the back and left hip, but again, such does not speak to particular functional limitations.

While Plaintiff did testify that she has disabling limitations related to sitting, standing and walking; difficulty in completing tasks and learning new tasks; and limitations in memory, given the ALJ's credibility findings, there is no cause for remand on this claim. As stated above, the ALJ need not include limitations which are not found to exist. *See Crawford,* 363 F.3d at 1161. Here, apart from the failure to consider the import of her obesity, the decision reflects a fair review of the available medical evidence by the ALJ and his conclusion that the limitations claimed by Plaintiff were simply not supported by that evidence. Plaintiff fails to demonstrate any error in the credibility finding nor demonstrate from this medical evidence greater limitations than those determined by the ALJ. Again, I find no basis for remand on this claim.

### D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

        Respectfully submitted this
        22nd day of January 2013.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
United States District Judge
Counsel of Record